IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA

| | | |
|---|---|---|
| Michael Rice, Jr., | ) | C/A No. 0:19-851-SAL-PJG |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| Anderson County; Anderson County | ) | **ORDER AND** |
| Detention Center; Anderson County Sheriff's | ) | **REPORT AND RECOMMENDATION** |
| Office; Southern Health Partners, Inc.; Dr. | ) | |
| James Walker; ASCO Sheriff John Skipper; | ) | |
| Major Garry Bryant; Nurse Lorie Shedd; | ) | |
| Nurse Krystal Jones; Nurse Ashley Wilson, | ) | |
| | ) | |
| Defendants. | ) | |
| | ) | |

The defendants removed this lawsuit originally filed by the plaintiff, Michael Rice, Jr., in

the Anderson County Court of Common Pleas.  This matter is before the court pursuant to 28

U.S.C. § 636(b) and Local Civil Rule 73.02(B)(2) (D.S.C.) for a Report and Recommendation on

the defendants' motions for summary judgment.[1]  (ECF Nos. 59 & 60.)  Rice filed responses in

---

[1] The court uses "the medical defendants" to refer collectively to Defendants Southern
Health Partners, Inc., Dr. James Walker, Lorie Shedd, Krystal Jones, and Ashley Wilson.  "The
Anderson defendants" refers to Anderson County, Anderson County Sheriff's Office, Anderson
County Detention Center, Sheriff John Skipper, and Garry Bryant.

opposition to the motions (ECF Nos. 62 & 79), and the defendants replied (ECF Nos. 70 & 83).[2] Having reviewed the record presented and the applicable law, the court concludes that the defendants' motions should be granted.

## BACKGROUND

The following facts are either undisputed or are taken in the light most favorable to the plaintiff, to the extent they find support in the record.[3] Rice was an inmate in the Anderson County Detention Center ("ACDC") from August 25, 2016 to September 22, 2016. Upon arrival at the detention center, Rice reported that he had visited the emergency room the prior day because of an insect bite on his right wrist. Rice had a history of boils and abscesses due to insect bites. Rice

---

[2] Rice moves for leave to file a sur-reply and attached a proposed sur-reply to the Anderson defendants' reply. (ECF No. 77.) The court observes that the Local Rules make no provision for sur-replies, and courts in this circuit generally only allow sur-replies when fairness dictates that a party be provided the opportunity to address an issue that was raised for the first time in a responsive briefing. See Khoury v. Meserve, 268 F. Supp. 2d 600, 605 (D. Md. 2003) ("Surreplies may be permitted when the moving party would be unable to contest matters presented to the court for the first time in the opposing party's reply."), aff'd, 85 F. App'x 960 (4th Cir. 2004); DiPaulo v. Potter, 733 F. Supp. 2d 666, 670 (M.D.N.C. 2010) ("Generally, courts allow a party to file a surreply only when fairness dictates based on new arguments raised in the previous reply."); see also F.D.I.C. v. Cashion, 720 F.3d 169, 176 (4th Cir. 2013) (finding the district court did not abuse its discretion in granting a motion to strike a sur reply because the district's local rules made no provision for sur-replies, the reply brief did not raise a new legal theory or new evidence, and the court's decision was not inequitable); Genesis Health Care, Inc. v. Soura, 165 F. Supp. 3d 443, 456 (D.S.C. 2015) (allowing the plaintiff to file a sur-reply to address an issue first raised after a motion was fully briefed).

Here, Rice argues he should be allowed to file a sur-reply because the Anderson defendants made incorrect statements in their reply that mischaracterize Rice's position. The court disagrees that the Anderson defendants have mischaracterized Rice's positions, but even assuming they did, they have not raised a new legal theory or evidence that would justify Rice being allowed to file a sur-reply. See Cashion, 720 F.3d at 176. Therefore, fairness does not dictate that Rice be allowed to file a sur-reply, and Rice's motion is denied. (ECF No. 77.) Regardless, Rice's proposed sur-reply merely repeats the arguments in his response to the Anderson defendants' motion. Thus, Rice's sur-reply would not have changed the court's recommendation.

[3] Contrary to Federal Rule of Civil Procedure 56(c)(1), Rice fails to provide citations to the record throughout his responses to the defendants' motions.

was taking medication—Bactrim (also known as Septra) to treat the infection caused by the bite. Rice was placed in a medical cell for wound care where he could be monitored by the medical staff, who work for a private company, Defendant Southern Health Partners, Inc., pursuant to a contract with the detention center. The medical staff continued Rice's course of Bactrim through its completion on August 29 and prescribed another ten-day course of Bactrim at the same dosage, and well as ibuprofen, because the infection had not cleared by the end of the first course. Rice's infection ultimately cleared and his wounds healed so that by September 7, 2016, he received a medical clearance physical and returned to regular housing in ACDC.

On September 15, 2016, Rice informed a nurse, Defendant Krystal Jones, about a rash on his buttocks. Jones identified the rash as a skin tag and provided Rice with an antifungal cream. The next day, September 16, while working in the ACDC kitchen, Rice was bitten by an ant. He started feeling bad early in the evening and woke up feeling sick around 1:00 a.m. on September 17. Rice was taken to the medical department by officers around 1:00 or 2:00 a.m. and reported general feelings of illness and pain and swelling in the area of the ant bite. The nurse on duty recorded a temperature of 99.4 degrees and noted that Rice's left elbow was swollen. The nurse also ordered a ten-day course of Bactrim and ibuprofen for pain. Rice was placed on wound care again and transferred to a medical cell for observation by medical staff.

Around 6:50 p.m. on September 17, the nurse on duty checked on Rice and found that his left forearm was very swollen from his elbow to his wrist, red, and hot to the touch. The nurse also found a small pinpoint opening near the elbow with no drainage. Rice's temperature had risen to 101 degrees. Defendant Dr. James Walker, the doctor on call but working remotely, doubled Rice's Bactrim prescription and ordered that Rice take acetaminophen in rotation with the ibuprofen.

On September 18, Defendant Nurse Lorie Shedd was on duty. Shedd checked on Rice multiple times throughout the day, making notes of her observation of the swelling along Rice's arm, administering Rice's medication, and checking his vital signs. Shedd marked Rice's arm with black ink to outline the area of redness and swelling and monitor its progression. Shedd observed that Rice's temperature had returned to normal and by the end of the day, the swelling had not progressed. Rice reported to Shedd that he had a spot on his buttocks, which Shedd observed to be a small red bump with no outline or drainage. Rice received the same care from the on-duty nurse on September 19, who observed that the swelling continued with no drainage or odor, and that Rice ran a slight fever at 99.1 degrees. On September 20, the nurse on duty observed that Rice's temperature had returned to normal but redness and swelling on his arm remained. Rice refused his second dose of Bactrim that day because he could not get out of bed, even though the nurse brought the medication to Rice's cell door.

Rice was scheduled to be released on the night of September 21, which was also the day Dr. Walker made his weekly visit to ACDC. Around 3:00 p.m., Dr. Walker examined Rice and diagnosed him with cellulitis. Dr. Walker observed that Rice's arm was still red, tender, and swollen but did not require an incision or drainage because no abscess had formed. Dr. Walker prescribed Rice a ten-day course of Dicloxacillin to cover possible staph and strep infections and in case Rice had any resistance to Bactrim. Also, because Rice was set to be released that night, Dr. Walker discussed with Rice the importance of having a medical provider continue to treat the infection.

Around 8:20 p.m., Rice submitted a kiosk request to ACDC's officer informing them that blisters had formed on the back of his arm that were filled with liquid and noting "it wasn't doing this at 3 PM when I saw the Dr." (Ex. I, Medical Defs.' Mot. for Summ. J., ECF No. 60-10 at 2.)

Rice was released from ACDC four hours later at 12:01 a.m. on September 22. Rice's father picked him up from ACDC and immediately took him to an emergency room.

At the emergency room, Rice explained his condition and the treatment he received at ACDC and reported to the emergency room staff "that since he has been released he has had worsening redness in his left arm and elbow." (Ex. G, Medical Defs.' Mot. for Summ. J., ECF No. 60-8 at 6.) Rice had no fever, but Rice's elbow had an abscess with blisters and pus under the skin. Rice was admitted to the hospital and given intravenous antibiotics at 9:45 a.m. At the time, the infection was still localized in Rice's arm. The treating physician observed the area on Rice's buttock but described it as inconsequential. At 11:25 a.m., the treating physician requested a surgical consultation. The surgeon responded to the request for medical treatment around 2:20 p.m. and found that the abscess had progressed to active drainage. The surgeon ordered an incision and drainage on Rice's elbow and buttock, which was performed around 7:00 p.m. Rice remained hospitalized for four days and was discharged on September 26 with several prescriptions and instructions to attend a follow-up appointment two weeks later.

Rice brought this action against the defendants raising state law claims of negligence and gross negligence, as well as violations of the Cruel and Unusual Punishment Clause of the Eighth Amendment to the United States Constitution pursuant to 42 U.S.C. § 1983.

## DISCUSSION

### A.     Summary Judgment

Summary judgment is appropriate only if the moving party "shows that there is no genuine dispute as to any material fact and the [moving party] is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A party may support or refute that a material fact is not disputed by "citing to particular parts of materials in the record" or by "showing that the materials cited do not

establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact." Fed. R. Civ. P. 56(c)(1). Rule 56 mandates entry of summary judgment "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case." Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986).

In deciding whether there is a genuine issue of material fact, the evidence of the non-moving party is to be believed and all justifiable inferences must be drawn in favor of the non-moving party. See Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 255 (1986). However, "[o]nly disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment. Factual disputes that are irrelevant or unnecessary will not be counted." Id. at 248.

The moving party has the burden of proving that summary judgment is appropriate. Once the moving party makes this showing, however, the opposing party may not rest upon mere allegations or denials, but rather must, by affidavits or other means permitted by the Rule, set forth specific facts showing that there is a genuine issue for trial. See Fed. R. Civ. P. 56(c), (e); Celotex Corp., 477 U.S. at 322.

## B.     The Anderson Defendants' Motion

### 1.     Negligence and Gross Negligence Claims

The Anderson defendants argue that Rice's negligence and gross negligence claims are barred by the applicable statute of limitations. Rice does not offer any response to the Anderson defendants' argument. Therefore, the court deems these claims abandoned as to the Anderson defendants. See Eady v. Veolia Transp. Servs., Inc., 609 F. Supp. 2d 540, 560-61 (D.S.C. 2009) ("The failure of a party to address an issue raised in summary judgment may be considered a

waiver or abandonment of the relevant cause of action."); Sawyers v. United Parcel Serv., Inc., C/A No. 1:18CV1037, 2019 WL 4305771, at *3 (M.D.N.C. Sept. 11, 2019) (collecting cases showing that "[t]his district and others within the Fourth Circuit agree that failing to respond to an argument constitutes an abandonment of a claim"). In any event, the court agrees that the claims are untimely.

The South Carolina Tort Claims Act, S.C. Code Ann. §§ 15-78-10 et seq., is the exclusive remedy for any tort committed by an employee of a governmental entity. S.C. Code Ann. § 15-78-70. The Act provides that the State, its agencies, political subdivisions, and other governmental entities are "liable for their torts in the same manner and to the same extent as a private individual under like circumstances," subject to certain limitations and exemptions provided in the Act. S.C. Code Ann. § 15-78-40. "The governmental entity asserting the Act as an affirmative defense bears the burden of establishing a limitation upon liability or an exception to the waiver of immunity." Hawkins v. City of Greenville, 594 S.E.2d 557, 563 (S.C. Ct. App. 2004). Rice's claims against the Anderson defendants must be brought pursuant to the Act because the defendants are officials, political subdivisions, or governmental entities of the State of South Carolina.

However, the statute of limitations for claims brought under the Act is generally two years. S.C. Code Ann. § 15-78-110 ("[A]ny action brought pursuant to this chapter is forever barred unless an action is commenced within two years after the date the loss was or should have been discovered."). Rice was discharged from the hospital in September 2016 but did not file this action until February 2019. Therefore, as argued by the Anderson defendants, Rice's negligence and gross negligence claims are barred by the statute of limitations.

## 2. Fourteenth Amendment Claim

A legal action under 42 U.S.C. § 1983 allows "a party who has been deprived of a federal right under the color of state law to seek relief." City of Monterey v. Del Monte Dunes at Monterey, Ltd., 526 U.S. 687, 707 (1999). To state a claim under § 1983, a plaintiff must allege: (1) that a right secured by the Constitution or laws of the United States was violated, and (2) that the alleged violation was committed by a "person" acting under the color of state law. West v. Atkins, 487 U.S. 42, 48 (1988).

### a. "Persons" Amenable to Suit

The Anderson defendants argue that Anderson County Detention Center and Anderson County Sheriff's Office are not "persons" amenable to suit pursuant to § 1983. Rice does not offer any response to the Anderson defendants' argument. Therefore, the court deems these claims abandoned as to the Anderson county defendants. See Eady, 609 F. Supp. 2d at 560-61. Regardless, the court agrees that these defendants are not amenable to suit.

A "person" amenable to suit pursuant to § 1983 must be an individual or body politic or corporate that is capable of acting under color of state law. Monell v. Dep't of Soc. Servs., 436 U.S. 658, 694 (1978). Courts have held that inanimate objects such as buildings, facilities, and grounds are not "persons" and do not act under color of state law. See, e.g., Nelson v. Lexington Cty. Det. Ctr., C/A No. 8:10-2988-JMC, 2011 WL 2066551, at *1 (D.S.C. May 26, 2011) (finding that the plaintiff failed to establish that the Lexington County Detention Center, "as a building and not a person, is amenable to suit under § 1983"); see also Brooks v. Pembroke City Jail, 722 F. Supp. 1294, 1301 (E.D.N.C. 1989) ("Claims under § 1983 are directed at 'persons' and the jail is not a person amenable to suit."). Additionally, the use of the term "staff," "department," "office," or the equivalent as a name for alleged defendants, is not adequate to state a claim against a

"person" as required in § 1983 actions. See, e.g., Harden v. Green, 27 F. App'x 173, 178 (4th Cir. 2001) ("The medical department of a prison may not be sued, because it is not a person within the meaning of § 1983."); Shadoan v. Florence Cty. Det. Ctr. Med. Dep't, No. 8:12-cv-2908 DCN JDA, 2013 WL 6408347, at *2 (D.S.C. Dec. 6, 2013) (collecting cases).

The Anderson defendants also argue that, to the extent they are named in their official capacities, Anderson County Sheriff John Skipper and Anderson County Sheriff's Office Major Garry Bryant are also not persons amenable to suit pursuant to § 1983. The court agrees. See Will v. Mich. Dep't of State Police, 491 U.S. 58, 67-68, 71 (1989) (holding that neither a State nor its officials acting in their official capacities are "persons" under § 1983, and finding Congress did not intend to override the State's sovereign immunity by enacting the statute); see also Hafer v. Melo, 502 U.S. 21, 25-31 (1991); Constantine v. Rectors & Visitors of George Mason Univ., 411 F.3d 474, 482-83 (4th Cir. 2005). Because South Carolina sheriffs and their deputies are state officials, see generally Gulledge v. Smart, 691 F. Supp. 947, 954-55 (D.S.C. 1988), aff'd, 878 F.2d 379 (4th Cir. 1989) (table), Skipper and Bryant are not "persons" amenable to suit in their official capacities.

Rice appears to argue that Skipper and Bryant "lost" their official capacity by violating the Constitution. (Pl.'s Resp. to Anderson Defs.' Mot. for Summ. J., ECF No. 62 at 9.) Rice appears to be arguing that Skipper and Bryant should be held *personally* liable, which the court addresses below. To the extent Rice seeks damages against them in their official capacities, which is another way of seeking damages against the state itself, see Kentucky v. Graham, 473 U.S. 159, 166-67 (1985), the claims fail as explained above. Therefore, the Anderson County Detention Center, Anderson County Sheriff's Office, and Sheriff John Skipper and Major Garry Bryant (in their official capacities) are not "persons" amenable to suit pursuant to § 1983.

### b.    Municipal Liability

The Anderson defendants argue that Rice cannot establish municipal liability against Anderson County.  The court agrees.

A plaintiff who seeks to assert a § 1983 claim against a municipality for acts done by a municipal official or employee must show that a municipal policy or custom caused the plaintiff's injury.  See Semple v. City of Moundsville, 195 F.3d 708, 712 (4th Cir. 1999) (citing Jordan v. Jackson, 15 F.3d 333, 338 (4th Cir. 1994)); see also Monell v. Dep't of Soc. Servs. of City of N.Y., 436 U.S. 658, 691, n.54 (1978) (holding that municipalities and "other local government units" that are not considered part of the State for Eleventh Amendment purposes are "persons" amenable to suit pursuant to § 1983 for official policies and customs that violate a federal right).  "[M]unicipalities are not liable pursuant to *respondeat superior* principles for all constitutional violations of their employees simply because of the employment relationship."  Edwards v. City of Goldsboro, 178 F.3d 231, 244 (4th Cir. 1999) (citing Monell, 436 U.S. at 692-94).  "Instead, municipal liability results only 'when execution of a government's policy or custom, whether made by its lawmakers or by those whose edicts or acts may fairly be said to represent official policy, inflicts the injury.' "  Spell v. McDaniel, 824 F.2d 1380, 1385 (4th Cir. 1987) (quoting Monell, 436 U.S. at 694).  "Because municipal liability results only when the municipality itself can be directly charged with fault for a constitutional violation, it results only when policy or custom as above defined is (1) fairly attributable to the municipality as its own, and is (2) the moving force behind the particular constitutional violation."  Id. at 1386-87 (internal quotation marks and citations omitted).

Here, Rice argues he can demonstrate that Anderson County "explicitly adopted or tacitly authorized a policy or practice violative of the Constitution" because Anderson County was a

signatory to contract under which Southern Health Partners provides health services to the Anderson County Detention Center. (Pl.'s Resp to Anderson Defs.' Mot. for Summ. J., ECF No. 62 at 8.; Health Services Agreement and Extensions, ECF No. 62-1.) However, Rice fails to explain how the contract was the "moving force behind" the purported constitutional violation. Spell, 824 F.2d at 1386-87. Instead, he argues that because Anderson County is a signatory to the contract, it "tacitly authorized" the purported constitutional violation. This argument appears to rest on a *respondeat superior* theory of liability because Rice asserts that Anderson County should be held responsible for merely having a contractual relationship with a party that violated his rights, rather than based on a policy or custom of county itself. See Edwards, 178 F.3d at 244 (rejecting *respondeat superior* principles for municipal liability); Spell, 824 F.2d at 1386 (stating that municipal liability will not attach unless the custom or usage is a "persistent and widespread" practice of municipal officials "so permanent and well-settled as to have the force of law") (citing Monell, 436 at 691); see also Jones v. City of Martinsburg, 961 F.3d 661, 672 (4th Cir. 2020) ("Because Monell liability cannot be predicated on a theory of *respondeat superior*, a single incident is almost never enough to warrant municipal liability."). Consequently, Rice has failed to point to any evidence in the record from which a reasonable jury could conclude that, even assuming he can establish an underlying constitutional violation,[4] a municipal policy or custom of Anderson County caused Rice's injuries.

---

[4] As explained below, the court also finds that Rice has failed to forecast any evidence from which a reasonable jury could conclude that any of the individual defendants violated Rice's constitutional rights. Thus, alternatively, Rice cannot establish municipal liability against Anderson County because he fails to put forth evidence of an underlying constitutional violation. Cf. City of L.A. v. Heller, 475 U.S. 796, 799 (1986) (providing that Monell will not authorize a claim for damages against a municipality where a jury has found that a city officer has inflicted no constitutional harm); S.P. v. City of Takoma Park, Md., 134 F.3d 260, 272 (4th Cir. 1998) (finding municipality cannot be held liable even if its training of officers was unconstitutional where no underlying Defendants constitutional violation occurred as to the plaintiff).

### c.    Individual Liability

The Anderson defendants argue that Rice cannot establish that Defendants Skipper or Bryant were personally involved in a violation of his constitutional rights.[5]  The court agrees.

To establish § 1983 liability for an individual, the plaintiff must demonstrate that the defendant was personally involved in the deprivation of the plaintiff's rights.  See Ashcroft v. Iqbal, 556 U.S. 662, 676 (2009) (providing that a plaintiff in a § 1983 action must plead that the defendant, through his own individual actions, violated the Constitution); Williamson v. Stirling, 912 F.3d 154, 171 (4th Cir. 2018) ("Importantly, mere knowledge of such a deprivation does not suffice."); Wright v. Collins, 766 F.2d 841, 850 (4th Cir. 1985) ("In order for an individual to be liable under § 1983, it must be 'affirmatively shown that the official charged acted personally in the deprivation of the plaintiff's rights.  The doctrine of *respondeat superior* has no application under this section.' ") (quoting Vinnedge v. Gibbs, 550 F.2d 926, 928 (4th Cir. 1977)).  Similarly, the plaintiff must establish that the defendant caused his injuries.  See Evans v. Chalmers, 703 F.3d 636, 647 (4th Cir. 2012) ("[C]onstitutional torts . . . require a demonstration of both but-for and proximate causation."); Malley v. Briggs, 475 U.S. 335, 344 n.7 (1986); see also Kane v. Lewis, 604 F. App'x 229, 234-35 (4th Cir. 2015).

Here, Rice fails to forecast any evidence from which a reasonable jury could conclude that Defendants Skipper or Bryant were personally involved in a deprivation of Rice's rights.  Rice

---

[5] The Anderson defendants argue that Skipper and Bryant are only sued in their official capacities, citing to a paragraph in the Amended Complaint that states Skipper and Bryant were acting in their official capacities during the relevant time.  (Anderson Defs.' Mot. for Summ. J., ECF No. 59-1 at 9-10.)  However, Rice does not expressly state that he only sued them in their official capacities, he seeks damages against them pursuant to § 1983, and he argues that they are personally liable in response to the Anderson defendants' motion.  (Pl.'s Resp., ECF No. 62 at 8-11.)  Therefore, the court construes the Amended Complaint as asserting individual liability claims against Defendants Skipper and Bryant.

argues that Skipper and Bryant were responsible for extending the contract with Southern Health Partners, failed to "ensure and maintain a safe and clean prison conditions [*sic*]," failed to "implement a policy to address the health concerns in housing all sick inmates together in one staph cell," and failed to "familiarize themselves and their staff" with Southern Health Partner's treatment protocols. (Pl.'s Resp. to Anderson Defs.' Mot. for Summ. J., ECF No. 62 at 9-10.) Rice does not support these claims by citation to the record. But even assuming that evidence exists in the record to support these claims, they are conclusory and do not establish that acts or omissions by Skipper or Bryant caused Rice's injuries. See Evans, 703 F.3d at 647. Rather, the allegations speak to Skipper's and Bryant's ultimate responsibility for the well being for ACDC inmates, even if they do not directly provide services to those inmates. Again, Rice inaptly attempts to apply principles of *respondeat superior* liability rather than show personal involvement through these defendants' own actions. See Wright, 766 F.2d at 850. Accordingly, Rice fails to forecast evidence that could support his claims for individual liability against Skipper and Bryant pursuant to § 1983.

## C.     The Medical Defendants' Motion

### 1.       Medical Malpractice

The medical defendants argue that Rice cannot produce evidence to support his medical malpractice claims. Specifically, they argue that Rice cannot produce evidence that the medical defendants breached the appropriate standard of care in their treatment of Rice at ACDC. The court agrees.

To recover in a negligence claim under South Carolina law, "a plaintiff must prove the following three elements: (1) a duty of care owed by defendant to plaintiff; (2) breach of that duty by a negligent act or omission; and (3) damage proximately resulting from the breach of duty."

Bloom v. Ravoira, 529 S.E.2d 710, 712 (S.C. 2000). Further, when a Complaint involves medical malpractice, the South Carolina Supreme Court requires a plaintiff to show: "(1) the generally recognized and accepted practices and procedures that would be followed by average, competent practitioners in the defendants' field of medicine under the same or similar circumstances, and (2) that the defendants departed from the recognized and generally accepted standards." David v. McLeod Reg'l Med. Ctr., 626 S.E.2d 1, 4 (S.C. 2006). A plaintiff must also "show that the defendants' departure from such generally recognized practices and procedures was the proximate cause of the plaintiffs alleged injuries and damages." Id.

Here, Rice fails to forecast any evidence that the medical defendants departed from a recognized and generally accepted standard of care, or that such a departure was the proximate cause of his injuries. Rice points to the testimony of his expert, Dr. Yashbir Rana, a physician who reviewed Dr. Walker's treatment of Rice.[6] Rice points to pages from the deposition of Dr. Rana purportedly about the "Subjective, Objective, Assessment, and Plan" ("SOAP") system as the appropriate standard of care and Dr. Walker's deviation from it. (Pl.'s Resp. to Med. Defs.' Mot. for Summ. J., ECF No. 79 at 12.) Rice argues that Dr. Rana's testimony "established causation by explaining how the ineffective treatment and failure to immediately diagnose Plaintiff led to the abscess formation, which necessitated his hospitalization. (Id.) Rice also argues that Dr. Walker's negligence was demonstrated by his failure to diagnose the spot on Rice's buttocks on Rice's last day at ACDC. (Id.)

---

[6] The medical defendants argue that the testimony of Rice's experts—Dr. Rana and Janet Ruoff, RN—is not admissible because it does not qualify as expert testimony under Federal Rule of Evidence 702 and Daubert v. Merrell Dow Pharmaceuticals, Inc. 509 U.S. 579 (1993). For the purposes of resolving this motion, the court assumes that their testimony is admissible under Rule 702. See, e.g., Cooper v. Smith & Nephew, Inc., 259 F.3d 194, 200 (4th Cir. 2001) (assuming without deciding that a proffered expert is qualified under Rule 702 for the purposes of addressing an argument in a motion for summary judgment).

However, the testimony cited from Dr. Rana does not discuss the SOAP system or how Dr. Walker deviated from it. (Rana Dep., Pl.'s Resp. Attach. 1, ECF No. 79-1 at 8-9.) The relied upon portion of Dr. Rana's testimony also does not discuss what part of Dr. Walker's treatment was "ineffective" or how it was ineffective. Nor does that testimony explain what Dr. Walker "failed to immediately diagnose" or how it led to the abscess formation or Rice's hospitalization. Rice produced some testimony from Dr. Rana—not cited in his memorandum—that discusses the SOAP system, (Rana Dep., Pl's Resp., ECF No. 79-1 at 14), but again, that testimony does not explain how Dr. Walker deviated from the SOAP system or how Dr. Walker caused Rice's abscess or hospitalization.

Additionally, as argued by the medical defendants, Dr. Rana's testimony contradicts Rice's claim that Dr. Walker breached the appropriate standard of care. When asked if Dr. Walker breached or deviated from the standard of care in his treatment of Rice, Dr. Rana answered, "No, I wouldn't say that. It was just the timing of—the infection was quite overwhelming, that it couldn't be treated with oral medications and had to be treated surgically." (Rana Dep., Ex. L, Med. Defs.' Mot. for Summ. J., ECF No. 60-13 at 15.) When asked if he had any criticisms of Dr. Walker's treatment, Dr. Rana testified that the dosage of Bactrim was "a bit too low" but he refused to stay that the dosage "breached" the standard of care. (Id., ECF No. 60-13 at 22, 26-27.)

As to the nurses—Lorie Shedd, Krystal Jones, and Ashley Wilson—Rice also fails to forecast any evidence from which a reasonable jury could find that they departed from a recognized and generally accepted standard of care, or that such a departure was the proximate cause of his injuries. Rice points to the testimony of Jane Ruoff, a registered nurse, who testified that the nurses on duty at ACDC between August 26-30 breached the standard of care by not taking Rice's vital signs and documenting the results. (Ex. F, Med. Defs.' Mot for Summ. J., ECF No. 60-7 at 6;

Ruoff Dep., Pl.'s Resp., ECF No. 79-2 at 4.)  However, as argued by the medical defendants, (Med. Defs.' Reply, ECF No. 83 at 2), the wound care between August 26-30 was for Rice's initial infection which fully healed, and Rice fails to point to any evidence that his initial infection had any bearing on his September infection from an ant bite that later required his hospitalization. Therefore, even assuming the nurses' failure to take Rice's vital signs and document them between August 26-30 was a departure from the appropriate standard of care, Rice fails to forecast any evidence that the breach was the proximate cause of his injuries.  Further, Rice fails to point to any other evidence that the nurses departed from an appropriate standard of care or caused his injuries. Consequently, Rice fails to forecast any evidence from which a reasonable jury could conclude that the medical defendants departed from an appropriate standard of care, or that such a departure caused Rice's injuries.

### 2.    Deliberate Indifference

The medical defendants argue that Rice cannot produce facts to support a claim that their treatment of Rice violated his constitutional rights.  Specifically, the medical defendants argue Rice cannot produce evidence to satisfy the causation and intent elements of a deliberate indifference claim.  The court agrees.

Initially, Rice argues that he was not provided sufficient medical treatment for his cellulitis in violation of the Cruel and Unusual Punishment Clause of the Eighth Amendment, and the parties analyze these claims under the Eighth Amendment.  However, claims of pretrial detainees against detention center officials regarding conditions of confinement are evaluated under the Due Process Clause of the Fourteenth Amendment rather than under the Eighth Amendment's proscription against cruel and unusual punishment.  See Bell v. Wolfish, 441 U.S. 520, 535 & n.16 (1979); Martin v. Gentile, 849 F.2d 863, 870 (4th Cir. 1988).  "The due process rights of a pretrial detainee

are at least as great as the eighth amendment protections available to the convicted prisoner; while

the convicted prisoner is entitled to protection only against punishment that is 'cruel and unusual,'

the pretrial detainee, who has yet to be adjudicated guilty of any crime, may not be subjected to

*any* form of 'punishment.' " Martin, 849 F.2d at 870; see also Hill v. Nicodemus, 979 F.2d 987,

991 (4th Cir. 1992). The United States Court of Appeals for the Fourth Circuit has held that the

standard for determining whether detention center officials have violated a pretrial detainee's right

to due process is deliberate indifference. See Hill, 979 F.2d at 991. Although these claims are

analyzed under the Fourteenth Amendment, case law interpreting the standard of "deliberate

indifference" under the Eighth Amendment is instructive. See, e.g., Brown v. Harris, 240 F.3d

383, 388 (4th Cir. 2001) (stating that whether the plaintiff is a pretrial detainee or a convicted

prisoner, the "standard in either case is the same—that is, whether a government official has been

'deliberately indifferent to any [of his] serious medical needs' ") (quoting Belcher v. Oliver, 898

F.2d 32, 34 (4th Cir. 1990)).

Generally, to establish a claim based on alleged deliberate indifference, an inmate must

establish two requirements: (1) objectively, the deprivation suffered or injury inflicted was

"sufficiently serious," and (2) subjectively, the prison officials acted with a "sufficiently culpable

state of mind." Farmer v. Brennan, 511 U.S. 825, 834 (1994); Williams v. Benjamin, 77 F.3d 756,

761 (4th Cir. 1996); see also Anderson v. Kingsley, 877 F.3d 539 (4th Cir. 2017) ("Farmer defines

deliberate indifference as the *intentional* taking of a risk that the defendant knows *might cause*

*harm* while *lacking any intent to cause such harm*.") (original emphasis).[7]  "What must be established with regard to each component 'varies according to the nature of the alleged constitutional violation.' " Williams, 77 F.3d at 761 (quoting Hudson v. McMillian, 503 U.S. 1, 5 (1992)).  Where the plaintiff claims, as here, that the defendants were deliberately indifferent to a serious medical need, the plaintiff must show (1) that he had a serious medical need—a condition diagnosed by a physician as mandating treatment, or one that is so obvious that even a lay person would easily recognize the necessity for a doctor's attention—and, (2) that the defendants had actual knowledge of the prisoner's serious medical needs and related risks but disregarded them anyway.  See DePaola v. Clarke, 884 F.3d 481, 486 (4th Cir. 2018); Scinto v. Stansberry, 841 F.3d 219, 225 (4th Cir. 2016); Iko v. Shreve, 535 F.3d 225, 241 (4th Cir. 2008).

Here, Rice argues the nurses knowingly failed to communicate his "medical conditions and requests for hospitalization" to Dr. Walker; failed to document Rice's "medical condition," which resulted in Dr. Walker failing to identify the spot on his buttock; and "omitted the documentation on the progression of his injury on his buttocks."  (Pl.'s Resp., ECF No. 79 at 18.)  However, Rice does not cite to any part of the record to support these assertions, nor does he explain with any specificity what information was not communicated to Dr. Walker or what documentation did not

---

[7] The court observes the United States Supreme Court has held that for a pretrial detainee to establish an excessive force claim under the Fourteenth Amendment, he need not show that the officer was subjectively aware that the use of force was excessive; rather, he need only show that the force purposely, knowingly, or recklessly used against him was objectively unreasonable. Kingsley v. Hendrickson, 576 U.S. 389 (2015).  However, Kingsley did not address whether this standard applies to other claims by pretrial detainees pursuant to the Fourteenth Amendment, and, to date, the United States Court of Appeals for the Fourth Circuit has not considered this issue. See Mays v. Sprinkle, 992 F.3d 295, 302 n.4 (4th Cir. 2021) (noting that the Fourth Circuit has yet to address whether Kingsley applies to other deliberate indifference claims by pretrial detainees and collecting other circuit court of appeals cases that are split on the issue).  However, the parties do not address this issue, and their arguments assume that a deliberate indifference claim includes a subjective element.

occur. Rice's conclusory assertions, without citation to the record, are insufficient to create a genuine issue of material fact. See Thompson v. Potomac Elec. Power Co., 312 F.3d 645, 649 (4th Cir. 2002) (stating the non-moving party has "the ultimate burden of demonstrating a genuine issue of material fact for trial" and that "[c]onclusory or speculative allegations do not suffice, nor does a "mere scintilla of evidence" in support of his case") (internal citations and quotation marks omitted); Beale v. Hardy, 769 F.2d 213, 214 (4th Cir. 1985) ("The nonmoving party, however, cannot create a genuine issue of material fact through mere speculation or the building of one inference upon another.").

At most, Rice claims that the nurses knowingly failed to document the progression of the spot on his buttocks and relay that progression to Dr. Walker, but Rice points to no evidence from which a reasonable jury could find that their omission of this information was deliberate or that the spot on his buttocks posed a substantial risk of harm to his health. See Scott v. Harris, 550 U.S. 372, 380 (2007) ("When opposing parties tell two different stories, one of which is blatantly contradicted by the record, so that no reasonable jury could believe it, a court should not adopt that version of the facts for purposes of ruling on a motion for summary judgment."). The only evidence in the record regarding the severity of the spot on his buttocks is from Rice's treating physicians who described the spot as "inconsequential," "minor," and "superficial." (Tamminemi Dep., Ex. I, Med. Defs.' Mot. for Summ. J., ECF No. 60-11 at 17; Beal Dep., Ex. P., Med. Defs.' Reply, ECF No. 83-2 at 3.). Rice points to no evidence in the record that the spot on his buttocks posed substantial risk to his health at the time he was treated at ACDC or that the medical defendants recognized it as such. Therefore, Rice fails to produce evidence that could show that the medical defendants consciously disregarded a substantial risk to his health.

**RECOMMENDATION**

Based on the foregoing, the court recommends the defendants' motions for summary judgment be granted.  (ECF No. 59 & 60.)

_____
Paige J. Gossett
UNITED STATES MAGISTRATE JUDGE

June 15, 2021
Columbia, South Carolina

*The parties' attention is directed to the important notice on the next page.*

## Notice of Right to File Objections to Report and Recommendation

The parties are advised that they may file specific written objections to this Report and Recommendation with the District Judge. Objections must specifically identify the portions of the Report and Recommendation to which objections are made and the basis for such objections. "[I]n the absence of a timely filed objection, a district court need not conduct a de novo review, but instead must 'only satisfy itself that there is no clear error on the face of the record in order to accept the recommendation.'" Diamond v. Colonial Life & Acc. Ins. Co., 416 F.3d 310 (4th Cir. 2005) (quoting Fed. R. Civ. P. 72 advisory committee's note).

Specific written objections must be filed within fourteen (14) days of the date of service of this Report and Recommendation. 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b); see Fed. R. Civ. P. 6(a), (d). Filing by mail pursuant to Federal Rule of Civil Procedure 5 may be accomplished by mailing objections to:

Robin L. Blume, Clerk
United States District Court
901 Richland Street
Columbia, South Carolina 29201

**Failure to timely file specific written objections to this Report and Recommendation will result in waiver of the right to appeal from a judgment of the District Court based upon such Recommendation.** 28 U.S.C. § 636(b)(1); Thomas v. Arn, 474 U.S. 140 (1985); Wright v. Collins, 766 F.2d 841 (4th Cir. 1985); United States v. Schronce, 727 F.2d 91 (4th Cir. 1984).